```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF VERMONT
```

```
UNITED STATES OF AMERICA    :
                            :
     v.                     :      File No. 1:06-CR-132
                            :
LADISLAV BOHAC              :
_____ :
```

### RULING ON DEFENDANT'S MOTION TO SUPPRESS
(Paper 35)

## I.  Introduction

Before the Court is Defendant Ladislav Bohac's Motion to Suppress statements and evidence which the government seeks to admit against him.  For the reasons set forth below, Defendant's motion is denied.

## II.  Background

Based upon the record before the Court, including the testimony offered at the January 30, 2008 hearing,[1] the Court finds the following facts.  On the afternoon of July 28, 2004, ATF Special Agents Joseph Steele and Daniel McPartlin, wearing civilian clothes and carrying guns that were not visible, went to Defendant's house to interview him.  The agents knocked on the door and Defendant, who at the time was 21 years old, answered. The agents identified themselves as ATF agents and told Defendant

---

[1] The only testimony offered was that of Agent Joseph Steele, whose testimony the Court finds credible.

his name had surfaced in an investigation and they would like to speak to him about it.  Defendant was advised, however, he was under no obligation to speak and could refuse to answer any questions or tell them to leave.  Defendant invited the agents into the house.

During the ensuing conversation around the dining room table, the agents asked a number of questions and in response, Defendant confirmed facts concerning gun trafficking between Vermont and Connecticut, explained he was a regular user of controlled substances, and stated there were firearms in the house.  This last statement prompted the agents to ask if they could retrieve the guns.  Defendant agreed and led them to his bedroom where three rifles, a handgun, and ammunition were found next to his bed.  The agents seized the rifles and Defendant abandoned the handgun and ammunition.[2]  Defendant then gave a written, signed statement concerning his involvement with firearms trafficking in Vermont.  At the conclusion of the interview, the agents left the home with the firearms and ammunition, approximately one hour after they had arrived.  Defendant was not arrested.

Throughout all of these interactions, Defendant appeared calm.  The tenor of the questioning remained equally calm and the

---

[2]Apparently, Defendant felt he could not abandon the rifles because he did not own them.

agents did not employ any strong-arm tactics.  At no point did Defendant ask the agents to leave or state he did not wish to continue talking.  Nor did he ever express reservations about answering questions or showing the firearms to the agents.

III. Discussion

Defendant seeks to suppress all statements made to the agents at his home on July 28, 2004 and all evidence seized as a result, arguing he was subjected to a custodial interrogation without being advised of his Miranda rights.  The government retorts Defendant was not in custody on July 28, 2004 and thus there was no need for the agents to give Miranda warnings.

Consistent with Miranda v. Arizona, 384 U.S. 436 (1966), statements made by an individual during custodial interrogation are inadmissible if not preceded by certain warnings.  An individual is in custody for purposes of Miranda when "a reasonable person in [the individual's] position would have understood himself to be subjected to the restraints comparable to those associated with a formal arrest." United States v. Newton, 369 F.3d 659, 671 (2d Cir. 2004) (quoting United States v. Ali, 68 F.3d 1468, 1472 (2d Cir. 1995)).  In determining whether an individual was in custody, an inquiring court must look at all the circumstances presented including: "whether a suspect is or is not told that she is free to leave; the location and atmosphere of the interrogation; the language and tone used

by the police; whether the suspect is searched, frisked, or patted down; and the length of the interrogation." Tankleff v. Senkowski, 135 F.3d 235, 244 (2d Cir. 1998) (internal citations omitted).

Considering the totality of the circumstances in this case, it is clear Defendant was not in custody on July 28, 2004. First, there is simply no hint of restraint or coercion. When the agents arrived at the home they were dressed in plain clothes and displayed no weapons. The agents immediately identified themselves and explained why they were there. They advised Defendant he was under no obligation to talk and in fact could terminate the interview at any time or simply ask the agents to leave. Nevertheless, Defendant invited the agents into his home and readily agreed to answer their questions and led them to the guns.

Second, the questioning took place in the familiar surroundings of Defendant's home, as opposed to, for instance, a dimly lit interrogation room at the police station. See United States v. Mitchell, 966 F.2d 92, 99 (2d Cir. 1992) (the defendant was not in custody where, among other things, "[t]he entire interview occurred in the familiar surroundings of [the defendant's] home"); United States v. Rakowski, 714 F. Supp. 1324, 1334 (D. Vt. 1987) ("Lower courts . . . almost universally hold that questioning in a suspect's home is not custodial

because individuals in a familiar environment are less likely to be intimidated by law enforcement officers."). Indeed, at all moments Defendant had control of the environment, inviting the agents into his home and voluntarily escorting them to his bedroom.

Third, the Court credits Agent Steele's testimony that the atmosphere of the interview remained calm throughout and there were no strong-arm tactics employed, such as a "good cop/bad cop" routine. Defendant was never pressured to answer, threatened with arrest, yelled at or restrained in any way and the entire episode lasted only one hour, after which the agents left without arresting Defendant.

In sum, the agents were not required to advise Defendant of his Miranda rights because a reasonable person in Defendant's position would not have felt himself to be subjected to the restraints comparable to those associated with a formal arrest.

IV. Conclusion

For these reasons, Defendant's Motion to Suppress (Paper 35) is DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 27th day of February, 2008.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge

5